IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

AMIR KIANPOUR

v. : Civil Action No. DKC 11-0802

RESTAURANT ZONE, INC., et al.

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this dispute over alleged unpaid wages is the parties' joint motion for approval of settlement. (ECF No. 11). The relevant issues have been briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the motion will be denied without prejudice.

I. **Background**

A. **Factual Background**

The following facts are set forth in the complaint unless otherwise noted. (ECF No. 1). In December 2002, Plaintiff Amir Kianpour began working as a part-time driver at a Pizza Zone restaurant in Montgomery County, Maryland. In February 2003, he accepted a position as a full-time pizza delivery driver, which he held until he was promoted to delivery manager in November 2008. He held that position until he resigned on or about June 29, 2011. (ECF No. 11-2, settlement agreement, at 1).

As a pizza delivery driver, Plaintiff "devote[d] virtually 100% of his time to delivering pizzas." (ECF No. 1 ¶ 13). He was paid $8.00 per hour, plus tips, and, "[f]rom around May 2007 to around November 2008, [he] generally worked . . . sixty (60) hours each week." (*Id*. at ¶ 16).[1] Upon his promotion to delivery manager, Plaintiff's salary structure changed significantly, but his job responsibilities did not. Instead of being paid at an hourly rate, "Defendants paid Plaintiff $600.00 per week," plus tips. (*Id*. at ¶ 18). "From November 2008 until May 2009, . . . Plaintiff devoted roughly thirty (30) minutes per week making other delivery drivers' work schedules and hiring new delivery drivers," but spent "the rest of his time delivering pizzas." (*Id*. at ¶ 19). In May 2009, "Defendants withdrew Plaintiff's authority to hire new delivery drivers," which meant that "Plaintiff spent roughly five (5) minutes per week making other delivery drivers' work schedules." (*Id*. at ¶ 20). The remainder of his time was spent delivering pizzas.

Plaintiff asserts that, from May 2007 to November 2008, he worked approximately sixty hours per week; from November 2008 to

---

[1] Plaintiff asserts that he worked a greater number of hours prior to this time, but the court is concerned primarily with the terms of his employment from March 28, 2008, through March 28, 2011, the date he filed his complaint. *See* 29 U.S.C. § 255(a) (an action under the Fair Labor Standards Act "may be commenced within two years after the cause of action accrued . . . except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued").

around June 2009, he worked sixty-five hours per week; from June 2009 to around June 2010, he worked fifty-five hours per week; and from June 2010 to the time he filed his complaint, he worked about forty-five hours per week. At no time during his employment with Pizza Zone was Plaintiff paid overtime wages for hours worked in excess of forty per week.

**B.  Procedural Background**

Plaintiff commenced this action on March 28, 2011, by filing a complaint against Defendants Restaurant Zone, Inc., Pizza Zone of Potomac, Inc., Adam G. Greenberg, and Belden G. Raymond, alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl. § 3-501, *et seq*. As relief for the alleged FLSA violations, Plaintiff sought to recover (1) "the amount of the unpaid overtime compensation due"; (2) "an additional amount of liquidated damages equal to the unpaid overtime compensation"; (3) "reasonable attorneys' fees and costs"; and (4) an order enjoining Defendants from "further violating 29 U.S.C. §§ 207, 215(a)(1) and 215(a)(2)."  (ECF No. 1, at 6).

Prior to the filing of any responsive pleading or motion, the parties reached an agreement to settle the case. On June 30, 2011, they jointly filed a motion to seal their motion for approval of settlement (ECF No. 10), which they separately filed

3

on July 6, attaching a fully executed settlement agreement (ECF No. 11). The court denied the motion to seal, providing the parties fourteen days to withdraw the sealed documents. (ECF Nos. 12, 13). The parties did not withdraw the documents, and their settlement agreement was unsealed on or about September 19, 2011.[2]

## II. Analysis

Under the FLSA, "there is a judicial prohibition against the unsupervised waiver or settlement of claims." *Taylor v. Progress Energy, Inc.*, 493 F.3d 454, 460 (4th Cir. 2007) (citing *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 114-16 (1946)). Nevertheless, "[c]laims for FLSA violations can . . . be settled when the settlement is supervised by the [Department of Labor] or a court." *Taylor v. Progress Energy, Inc.*, 415 F.3d 364, 374 (4th Cir. 2005). While the Fourth Circuit has not directly addressed the factors to be considered in deciding motions for approval of such settlements, district courts in this circuit have typically employed the considerations set forth in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir.

---

[2] In light of the unsealing, the terms of the settlement agreement are now public, making the confidentiality provision potentially unenforceable. In any event, the provision contravenes the purpose of the FLSA. *See, e.g.*, *Poulin v. General Dynamics Shared Resources, Inc.*, No. 3:09-cv-00058, 2010 WL 1813497, at *2 (W.D.Va. May 5, 2010).

1982). As this court stated in *Lopez v. NTI, LLC*, 748 F.Supp.2d 471, 478 (D.Md. 2010):

> *Lynn's Food Stores* suggests that an FLSA settlement should be approved if the settlement "does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute." [*Lynn's Food Stores*, 679 F.2d at 1354]; *see also Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08cv1210, 2009 WL 3094955, at *8 (E.D.Va. Sept. 28, 2009) ("'If the proposed settlement reflects a reasonable compromise over contested issues,' the settlement should be approved.") (quoting *Lynn's Food Stores*, 679 F.2d at 1354). In contrast to Defendants' all-or-nothing approach, *Lynn's Food Stores* and similar cases recognize a role for less-than-full-value compromise in the FLSA settlement process. *See, e.g., Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 57–58 (E.D.N.Y. 2010) (approving settlement of FLSA claims at 13–17% of maximum recovery). These compromises reflect the "many factors [that] may be in play as the parties negotiate," including disagreements over "the number of hours worked by the plaintiff, the plaintiff's status as an exempt employee, or the defendant's status as a covered employer." *Bonetti v. Embarq Mgmt. Co.*, 715 F.Supp.2d 1222, 1227 (M.D.Fla. 2009).

It follows logically, then, that parties requesting approval of a proposed settlement "must provide enough information for the court to examine the bona fides of the dispute":

> The parties' motion (or presentation at a hearing) must describe the nature of the dispute (for example, a disagreement over coverage, exemption, or computation of hours

>worked or rate of pay) resolved by the compromise. Parties wishing to compromise a coverage or exemption issue must describe the employer's business and the type of work performed by the employee. The employer should articulate the reasons for disputing the employee's right to a minimum wage or overtime, and the employee must articulate the reasons justifying his entitlement to the disputed wages. If the parties dispute the computation of wages owed, the parties must provide each party's estimate of the number of hours worked and the applicable wage. In any circumstance, the district court must ensure the bona fides of the dispute; implementation of the FLSA is frustrated if an employer can extract a disproportionate discount on FLSA wages in exchange for an attenuated defense to payment.

*Dees v. Hydradry, Inc.*, 706 F.Supp.2d 1227, 1241-42 (M.D.Fla. 2010).

The court must also assess the reasonableness of the proposed award of attorneys' fees. A number of recent cases decided by the United States District Court for the Middle District of Florida, relying upon *Lynn's Food Stores*, have described the court's task in this regard as assuring "'both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement.'" *Dees*, 706 F.Supp.2d at 1243 (quoting *Silva v. Miller*, 307 Fed.Appx. 349, 351 (11th Cir. 2009)). Thus, if the motion demonstrates that the proposed fee award was "agreed upon separately and without regard to the amount paid to

the plaintiff, then, unless . . . there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel." *Bonnetti*, 715 F.Supp.2d at 1228.

Section 216(b) expressly provides, however, that "in addition to any judgment awarded to the plaintiff or plaintiffs," the court must "allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Thus, where a judgment is entered in favor of the plaintiffs on their FLSA claims, an award of reasonable attorneys' fees is mandatory. Of course, in the context of a settlement, judgment is not entered in favor of either party and the defendants typically deny that any FLSA violation has occurred. It would make little sense to require the amount of the fees awarded to be reasonable where the plaintiffs prevail on the merits, but to abandon that requirement altogether where the parties agree to settle the case. Moreover, from a practical standpoint, where the plaintiff would receive less than the full value of his claims in a settlement, his recovery could be adversely affected by an exorbitant award of attorneys' fees. *See Cisek v. National Surface Cleaning, Inc.*, 954 F.Supp. 110, 110 (S.D.N.Y. 1997) (plaintiffs' counsel "should have

7

perceived that every dollar the defendants agreed to pay [the attorneys] was a dollar that defendants would not pay to the plaintiffs").

Accordingly, the reasonableness of the fee award proposed in an FLSA settlement must be independently assessed, regardless of whether there is any suggestion that a "conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Dees*, 706 F.Supp.2d at 1243. In making that assessment, courts typically "use the principles of the traditional lodestar method as a guide." *Poulin*, 2010 WL 1813497, at *1 (quoting *Almodova v. City and County of Honolulu*, No. 07-00378, 2010 WL 1372298, at *7 (D.Hawai'i Mar. 31, 2010)). The lodestar amount is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate. *See Robinson v. Equifax Info. Servs.*, LLC, 560 F.3d 235, 243 (4th Cir. 2009). It follows that parties seeking approval of an award of attorneys' fees must provide the court with the means for making this assessment, *e.g.*, declarations establishing the hours expended, broken down for each task, and demonstrating that the hourly rate was reasonable.

The parties' joint motion for approval is "clearly deficient in setting forth facts or arguments upon which the [c]ourt could evaluate the [s]ettlement [a]greement for fairness." *Poulin*, 2010 WL 1813497, at *1. Regarding the

nature of their dispute, the parties point to their disagreement as to whether, as a delivery manager, Plaintiff was "exempt from the overtime provision of the Fair Labor Standards Act because he was employed in a bona fide executive capacity," citing 29 U.S.C. § 213. (ECF No. 11 ¶ 3). If the case were to proceed, Defendants would ultimately bear the burden of proving, by clear and convincing evidence, that Plaintiff's job fell within the claimed exemption; indeed, the Fourth Circuit has instructed that "FLSA exemptions are to be 'narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within [the exemptions'] terms and spirit.'" *Desmond v. PNGI Charles Town Gaming, L.L.C.*, 564 F.3d 688, 692 (4th Cir. 2009) (quoting *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)). While it is not necessary for an employer seeking approval of an FLSA settlement to show that it is likely to prevail on the merits of its argument as to a claimed exemption, neither is it sufficient for it merely to assert, in conclusory fashion, that an exemption applies – particularly where, as here, the complaint strongly suggests that it does not. Rather, the employer must present some evidence, such as an affidavit or declaration, establishing a good faith basis for its belief that an exemption applies. Here, Defendants have submitted no evidence or argument in this regard.

The parties "agree that [Plaintiff] worked hours over forty in a workweek during the three years prior to the time the Complaint was filed," but assert that "[t]he exact number of hours . . . has not been calculated with specificity." (ECF No. 11 ¶ 5).[3] Absent such calculation, however, the court is unable to compare the amount to which Plaintiff might be entitled, if he were to prevail on the merits, with the amount he would receive under the proposed settlement.  In other words, it cannot know the extent to which Plaintiff's claim of unpaid wages would be compromised by the settlement and, consequently, cannot assess whether any such compromise is reasonable.  While Plaintiff has apparently agreed that the proposed settlement "will fully satisfy any claims for overtime compensation" (*id.* at ¶ 8), the court must make that assessment independently before it will grant approval.

Finally, the parties have provided no support for the proposed award of attorneys' fees.  "A court's award of reasonable attorneys' fees is the product of the reasonable hours expended multiplied by a reasonable hourly rate."  *Xiao-Yue Gu v. Hughes STX Corp.*, 127 F.Supp.2d 751, 763-64 (D.Md. 2001).  In assessing reasonableness, the Fourth Circuit has

---

[3] The suggestion that the parties are considering three years, rather than two, implicates the fact that, from March to November 2008, Plaintiff was a pizza delivery driver, not the delivery manager.  It is unclear how the executive exemption could possibly apply to this time period.

instructed that district courts should consider certain factors, including:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n. 28 (4th Cir. 1978).

Here, the parties have provided no declarations, invoices, or similar documentation that would permit the court to assess the reasonableness of counsel's hourly rate or the number of hours expended on the case. *See Poulin*, 2010 WL 1813497, at *1 (denying settlement, in part, because "[t]he parties have offered no justification underlying their request for an award of attorney's fees, much less the factual basis required for the Court to apply the lodestar analysis as a guide in determining the reasonableness [of] the requested attorney's fees"). Where, in the context of a settlement, the court "finds there is

insufficient information to make a lodestar analysis, the Local Rules permit an order for the production of appropriate documentation." *Gionfriddo v. Jason Zink, LLC*, Civil Action No. RDB-09-1733, 2011 WL 2791136, at *3 (D.Md. July 15, 2011) (citing Local Rules, App. B(1)(d) ("[u]pon request by the Judge . . . counsel . . . shall turn over . . . statements of time and the value of that time in the 'litigation phase' format provided in Guideline 1.b")). Such documentation is necessary in this case.

### III. Conclusion

For the foregoing reasons, the parties' joint motion for approval of settlement will be denied without prejudice to their right to file an amended motion within fourteen days. A separate order will follow.

```
                              _____/s/_____
                              DEBORAH K. CHASANOW
                              United States District Judge
```